UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


PAMELA GREEN                                    CIVIL ACTION

v.                                              NO. 17-2101

DG LOUISIANA, LLC                               SECTION "F"


ORDER AND REASONS

Before the Court are two motions: (1) the defendant's motion for summary judgment; and (2) the defendant's motion in limine to exclude the testimony of the plaintiff's treating neurosurgeon, Dr. Peter Liechty. For the reasons that follow, the motion for summary judgment is GRANTED and, therefore, the motion in limine is DENIED as moot.

**Background**

This falling merchandise case arises out of a Dollar General customer's claim that she sustained severe bodily injuries while shopping for popsicles.

On the evening of March 25, 2016, Pamela Green visited a Dollar General store located in Violet, Louisiana to purchase frozen treats for her children. As she opened a door to the store's freezer and placed her hand on a box of popsicles, a plastic half-gallon jug called the Igloo Legend Beverage Cooler fell from its perch on top of the freezer onto Green's head. The jug weighs slightly less than one pound.

1

Shortly after the incident, Ms. Green allegedly began suffering from headaches and neck pain. According to her treating physicians, the incident caused a cervical herniation at the C-5/6 level, for which she ultimately underwent a disc replacement surgery.

On January 17, 2017, Green sued DG Louisiana, LLC ("Dollar General") in the 34th Judicial District Court for the Parish of St. Bernard. In her state court petition, Green alleges that Dollar General's negligence caused her to sustain severe bodily injuries, necessitating treatment and surgery. She itemizes her damages as follows: loss of consortium, loss of past wages and future earning capacity, permanent disability and disfigurement, past and future medical expenses, mental anguish, and inconvenience.

Dollar General timely removed the lawsuit to this Court, invoking the Court's diversity jurisdiction. Nearly a year later, on March 5, 2018, Dollar General moved for summary judgement, contending that there was no genuine issue of material fact that it was not liable for Green's injuries under the Louisiana Merchant Liability Act. That motion relied heavily upon the deposition testimony of Mindy McBride, a Dollar General assistant store manager. McBride testified that Dollar General employees perform safety checks of the shelves and freezers three times a day, that she personally tested the stability of the coolers by performing

a "bump test," and that she had inspected the cooler placement an hour and a half before the alleged incident. McBride further testified that she also bumped up against the freezers and slammed their doors shortly after the incident, and the coolers did not move.

On March 12, 2018, the plaintiff moved to continue the submission date on the defendant's motion for summary judgment until after the completion of discovery, pursuant to Federal Rule of Civil Procedure 56(d). The plaintiff submitted that, without additional discovery – namely, a workable copy of the store's surveillance video, deposition testimony of the employee on duty at the time of the incident, and further probing of McBride to determine the accuracy of her testimony - she could not present facts essential to justify her opposition.[1] Troubled by the

---

[1] As to the veracity of McBride's deposition testimony, Eric O'Bell, counsel for plaintiff, advised the Court that he had recently become aware that Mindy McBride was intimated and coerced by Mike Wiltz, her former manager at Dollar General, before giving her deposition. O'Bell attached to the motion a sworn declaration, in which he attested that McBride approached Green, told her that she had been coerced, and provided copies of text messages between McBride and Wiltz.

Green also submitted an affidavit, in which she attested that she knew McBride before the incident because they went to high school together. According to Green's affidavit, McBride contacted Green via Facebook Messenger on November 2, 2017 and asked Green to call her. McBride then informed Green that, before McBride's deposition, her supervisor informed her via text message that she could be held personally responsible if Dollar General was found to be at fault. Specifically, in response to a text from Mindy McBride stating that she had the deposition for Green the next day, a contact named "Mike Dollar General" replied:

3

allegations concerning McBride's testimony, as well as by the delay with which plaintiff's counsel addressed this issue, the Court granted the plaintiff's motion to continue and reset the submission date on the defendant's motion for summary judgment to May 30, 2018. The plaintiff then subpoenaed McBride, but she failed to appear for her deposition. Accordingly, in its Order and Reasons dated June 4, 2018, this Court denied the defendant's motion for summary judgment, without prejudice, and continued the pre-trial conference and trial dates from June 7, 2018 and June 25, 2018 to March 8, 2019 and March 25, 2019, respectively. Thereafter, the plaintiff filed a motion to compel and enforce the subpoena against McBride, which was referred to Magistrate Judge Wilkinson. McBride ultimately was re-deposed on August 22, 2018, during which she confirmed that she was "intimidated" prior to her first deposition; however, she adamantly denied giving false testimony.

The defendant now moves for summary judgment for a second time, contending that there is no genuine issue of material fact that the plaintiff will be unable to satisfy her burden pursuant

---

> I thought that was a couple of weeks ago. [J]ust remember what I said if your store is found to be negligent then that is a direct reflection on you and you could be terminated for failing to protect company assets so you better say whatever it is you have to say to cover your ass.

McBride responded, "I know." And she was deposed the following day, July 28, 2017.

4

to Subsection A of Louisiana's Merchant Liability Act, La. R.S. § 9:2800.6.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).

"[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

II.

*A.*

Under Louisiana law, "falling merchandise" claims are governed by Subsection A of Louisiana's Merchant Liability Act, La. R.S. § 9:2800.6. Davis v. Wal-Mart Stores, Inc., 00-0445 (La. 11/28/00); 774 So. 2d 84, 90 (citing Smith v. Toys "R" Us, Inc., 98-2085 (La. 11/30/99); 754 So. 2d 209). Subsection A provides:

> A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

La. R.S. § 9:2800.6(A). The Louisiana Supreme Court has interpreted the plaintiff's burden of proof under La. R.S. § 9:2800.6(A) as follows:

> [A] plaintiff who is injured by falling merchandise must prove, even by circumstantial evidence, that a premise hazard existed. Once a plaintiff proves a prima facie premise hazard, the defendant has the burden to exculpate itself from fault by showing that it used reasonable care to avoid such hazards by means such as periodic clean up and inspection procedures.
>
> To prevail in a falling merchandise case, the customer must demonstrate that (1) he or she did not cause the merchandise to fall, (2) that another customer in the aisle at that moment did not cause the merchandise to fall, *and* (3) that the merchant's negligence was the cause of the accident: the customer must show that either a store employee or another customer placed the merchandise in an unsafe position on the shelf or otherwise caused the merchandise to be in such a precarious position that eventually, it does fall. Only when the customer has negated the first two possibilities *and* demonstrated the last will he or she

7

> have proved the existence of an "unreasonably dangerous" condition on the merchant's premises.

<u>Davis</u>, 774 So. 2d at 90 (internal citations omitted). Accordingly, to sustain her burden of proof, Ms. Green must demonstrate through direct or circumstantial evidence that (1) she did not cause the cooler to fall, (2) another customer in the aisle at that moment did not cause the cooler to fall, and (3) Dollar General's negligence was the cause of the accident. See <u>id.</u>

*B.*

Dollar General contends that it is entitled to judgment as a matter of law because Ms. Green cannot satisfy the second prong of the <u>Davis</u> test. The plaintiff counters that summary judgment is inappropriate because her own testimony demonstrates that another customer in the aisle did not cause the cooler to fall and because conflicting testimony of Dollar General employees creates a factual dispute as to whether the merchant's negligence caused the accident.

First, the Court notes that it is undisputed that Ms. Green has satisfied the first prong of the <u>Davis</u> test. During her deposition taken on July 28, 2017, the plaintiff testified that she did not touch or move the cooler prior to the accident:

> **Q.** Did you touch this thermos or move it for any reason prior to the accident?
> **A.** No.

Accordingly, she has satisfied on this record, in accordance with La. R.S. § 9:2800.6(A) and Louisiana jurisprudence, that she did not cause the cooler to fall.

However, the parties disagree as to whether the plaintiff has established the second prong of the Davis test. Dollar General contends that Ms. Green has not satisfied her burden of proving that an unidentified male who was in the aisle with her did not cause the cooler to fall. The plaintiff counters that this male customer could not have caused the cooler to fall because he had just entered the aisle and was at the opposite end when the incident occurred. She further submits that Dollar General has attempted to shift the blame to a customer simply to detract focus from its failure to properly staff and maintain the store in question and to follow its own guidelines.

The Court finds that the plaintiff's own testimony concerning the incident fails to negate the possibility that another customer in the aisle caused the cooler to fall. Specifically, Ms. Green testified that, upon entering the store, she "[w]alked down the aisle, get [sic] to the freezer section, looking at the ice cream. Opened the door, proceeded to grab the Willy Wonka push-up pops; and come down the cooler." She further testified that she did not "see the top shelf of this freezer before the cooler came down" or "look at the top shelf, at any of the freezers at all, before the accident."

9

Moreover, the plaintiff candidly admitted during her deposition that she was not alone in the frozen food aisle. She testified that an unidentified male customer, taller than her and with a slender build, was in the aisle with her when the cooler allegedly fell:

> **Q.** Okay. All right. Was there anyone else in the aisle?
> **A.** One older guy was in the aisle with me.

The plaintiff also identified and marked the location of this male customer when she saw him walking toward her; contrary to the plaintiff's assertion in her opposition papers, he was *not* at the opposite end of the aisle or beginning to enter the aisle at the moment of the incident:

> **Q.** Okay. Can you mark where he was?
> **A.** Like in this area with the --
>
> **Q.** So he was towards your right --
> **A.** Yeah.
>
> **Q.** -- facing the --
> **A.** Yeah. He was actually facing -- he was walking down the aisle. He was coming down the aisle.
>
> **Q.** Okay. Do you know if he was there before the accident happened?
> **A.** I don't know. I don't know. I wasn't paying attention.
>
> **Q.** Okay. But he could have been?
> **A.** I mean, he could have. I'm not sure.

She further testified that, just after the cooler fell, the male customer was "right there, looking:"

> **Q.** Was he -- was he there at the time of the accident?

10

> **A.** Yeah. When the cooler -- when it came down -- and, like I say, I'm in the cooler – I'm in the freezer door. I have the ice cream in this hand and the Igloo chest in my chest. And as I'm turning, he's right -- you know, he's right there, looking.

And the plaintiff added that she does not know whether he touched or moved the cooler, or what caused the cooler to fall:

> **Q.** Do you know if the man that was in the aisle touched it or moved it --
> **A.** No.
>
> **Q.** -- prior to -- okay. So even if he did touch it or move it, you wouldn't know?
> **A.** No.
>
> . . .
>
> **Q.** . . . Oh, let me ask you -- do you know what caused this Igloo to fall?
> **A.** No.
>
> **Q.** Okay. And just to clarify the record, I was referring to "Igloo" -- when I said "Igloo," I was referring to Exhibit B.

In a similar vein, the plaintiff agreed that her focus was straight ahead the whole time and testified that she was not paying attention to the male customer:

> **Q.** So you agree that your focus the whole time was straight ahead?
> **A.** Yeah.
>
> . . .
>
> **Q.** Do you recall what color hair he had?
> **A.** No.
>
> **Q.** Did he have gray hair or --
> **A.** I'm not sure. **I wasn't even paying attention to him.**

(Emphasis added). Because the plaintiff testified that she did not look at the top of the freezer before the cooler fell, that

11

her focus was straight ahead, that she was inside of the freezer when the cooler fell, that she was not paying attention to the male customer, and that she does not know what caused the cooler to fall, the Court finds that, on this record, she has not satisfied her burden of proof pursuant to La. R.S. § 9:2800.6(A).

Three Louisiana appellate court decisions cited by Dollar General that interpret the second prong of the Davis test provide helpful guidance. For example, in Marshall v. Dillard Department Stores, Inc., the Louisiana Fourth Circuit Court of Appeals affirmed the granting of a motion for involuntary dismissal after the plaintiff failed to provide evidence to establish that another customer did not cause a clothing rack to fall over. No. 07-0614, 2008 La. App. Unpub. LEXIS 30, at *4-6 (La. App. 4 Cir. Jan. 16, 2008). The Fourth Circuit reasoned that, after testifying that she "did not know if there were any other customers in the area around the rack that fell over," the plaintiff "introduced no other testimony or evidence to establish that another customer did not cause the clothing rack to fall." Id. at *4. Similarly, in Humphrey v. Wal-Mart Stores, Inc., the Louisiana Second Circuit Court of Appeals affirmed the dismissal of a falling merchandise claim at the summary judgment stage. 44-614 (La. App. 2 Cir. 8/19/09); 16 So. 3d 1252. In Humphrey, glass bottles of root beer allegedly fell from a shelf and shattered after the plaintiff retrieved a six-pack and placed it in her cart. Id. at 1253. The

Second Circuit concluded that, because the plaintiff testified that the crash occurred after she had turned to walk away, that there were other customers in the aisle, and that she did not know what caused the bottles to fall, she had produced no evidence to establish that another customer did not cause the root beer to fall from the shelf. Id. at 1255.

Most recently, in Frazier v. Dollar General Corp., the Louisiana First Circuit Court of Appeals, conducting a de novo review, determined that the plaintiff "did not meet the stringent burden of proof required in a falling merchandise case." No. 16-1628, 2017 La. App. Unpub. LEXIS 187, at *11 (La. App. 1 Cir. June 2, 2017). In Frazier, the plaintiff testified that plastic tote lids suddenly fell from a shelf while he was shopping at Dollar General, after which he noticed an unidentified individual in the next aisle. Id. at *9. Finding that the "unknown individual one aisle over could have been a customer and could have caused the merchandise to fall," the First Circuit held that the plaintiff failed to establish that another customer did not cause the merchandise to fall. Id. at *10.

The plaintiff contends that the case literature cited by Dollar General is distinguishable from the facts of this case in several respects. First, the plaintiff notes that, unlike the plaintiff in Humphrey, who heard a crash between one to five minutes after she had retrieved a pack of root beer and walked

13

away, the accident here happened immediately, and Ms. Green "knew what hit her on the head" and that "a customer did not knock over the igloo ice cooler." See Humphrey, 16 So. 3d at 1255. She further contends that "[r]eading the facts in the light most favorable to the plaintiff: the plaintiff and a man who just entered the aisle were the only people present on the aisle at the time the cooler fell; they were at opposite ends of the aisle; the plaintiff avers that she did not disturb or touch the Igloo cooler and the other man did not touch the Igloo cooler."

Although the Court recognizes that it must construe the facts in the light most favorable to the non-moving party, it nonetheless finds that the plaintiff's interpretation of her deposition testimony is unreasonable at best. As previously discussed, the plaintiff testified that a man was "coming down the aisle;" however, she did not testify that he was at the opposite end of the aisle or beginning to enter the aisle at the moment of the incident. Rather, she testified under oath that he was "right there, looking" and that she was unaware as to whether he had touched or moved the cooler. Similarly, Ms. Green points to no positive evidence, testimonial or otherwise, that the freezer "wobbled" on the day of the incident. To the contrary, Ms. Green testified that she did not notice the freezer door wobble when she opened it:

>   **Q.** Did that -- did the door wobble or anything that you recall?
>   **A.** No.

The plaintiff next contends that the cases cited by Dollar General do not involve allegations of negligence on the part of the merchant. Here, the plaintiff submits that she has introduced evidence to demonstrate that (1) Dollar General displayed the falling merchandise (the cooler) on top of the freezer in violation of company policy,[2] and (2) the store at issue was inadequately

---

[2] To establish that Dollar General employees displayed coolers on top of the freezer, Ms. Green points to the most recent deposition testimony of Mindy McBride, in which she attests:
>   **Q.** Okay. I'm going to ask you this: On the date of the accident, do you recall coolers being on top of the freezer?
>   **A.** Yes.

The plaintiff also points to her own deposition testimony, in which she states that she noticed coolers on top of the freezer right after the accident occurred:
>   **Q.** Okay. How many of these thermoses did you see up there?
>   **A.** It -- probably like four or five more of them. I'm not quite sure, but it was a few more up there.
>   **Q.** Okay. Were you able to tell where exactly this -- the spot that this thermos fell from?
>   **A.** Yeah. After looking at them, yeah, I could see where that one came from.
>   **Q.** Okay. How many across were they stacked on top of the freezer?
>   **A.** Like I said, it had to be like five -- five or six of them --

To substantiate her allegation that Dollar General prohibited its employees from displaying merchandise on top of the freezers, Ms. Green points to the deposition testimony of Kadee Martinez, the assistant store manager who was on duty when the accident occurred. On March 28, 2018, Ms. Martinez testified:
>   **Q.** You were taught not to put Igloo ice coolers on top of the freezer; correct?
>   **A.** Right.

staffed at the time of the incident, thereby preventing the possibility of safety inspections.³ But her submissions fall well short of the stringent requirement under Louisiana law that plaintiff confront the issue of a third person's involvement as a cause of the accident.

Finally, the plaintiff contends that, even if a customer had placed the cooler on top of the freezer, Dollar General nonetheless would have had a duty to investigate. In support, Ms. Green invokes Stepherson v. Wal-Mart Stores, Inc., in which the Louisiana Second Circuit Court of Appeals affirmed a judgment in favor of a Wal-Mart customer injured by falling dumbbells. 34,547 (La. App. 2 Cir. 4/4/01); 785 So. 2d 950. There, the plaintiff testified that she picked up a dumbbell to examine it, put it back, and then turned around, at which time it rolled off and hit her toe. Id.

---

**Q.** All right. And did they explain why you weren't supposed to put them up there?
**A.** Reasons like this.
**Q.** Okay. So --
**A.** Accidents, injury, things like that.
• • •
**Q.** Based on your training, if you would have seen the cooler on top of the ice -- the freezer, you would have taken it down and put it where it belongs; right?
**A.** Yes.

³ In this regard, the plaintiff again relies upon the deposition of Ms. Martinez, in which she testifies that she was the only employee in the store on the evening of the incident:
**Q.** And you were alone that day, that -- when you started?
**A.** Yes.
**Q.** Okay. So you weren't able to go check the aisles and see if it was up there; correct?
**A.** Correct.

at 953. Noting that rounded dumbbells, weighing between five and ten pounds each, were stacked on top of each other and "displayed at chest level on an unsecured shelf without any restraining safety devices," the Second Circuit determined that the "manner of displaying the[] weights created an unreasonable risk of harm that could have been easily remedied." Id. at 956. The Court further reasoned that, because "the merchant expected and anticipated that customers would handle and move this merchandise," neither the conduct of the plaintiff, nor that of any other customer "was an intervening cause absolving Wal-Mart from liability." Id.

On this record, the Court finds that the plaintiff has failed to negate the possibility that another customer in the aisle at that moment – i.e., the unidentified male customer – knocked over the cooler and thereby *caused* the merchandise to fall onto her head as Louisiana law seems to require of her. See Davis, 774 So. 2d at 90 ("Only when the customer has negated the first two possibilities *and* demonstrated the last will he or she have proved the existence of an 'unreasonably dangerous' condition on the merchant's premises."). Therefore, the Court finds that Ms. Green has not met "the stringent burden of proof required in a falling merchandise case under La. R.S. 9:2800.6(A)." See Frazier, 2017 La. App. Unpub. LEXIS 187, at *11.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant's motion for summary judgment is hereby GRANTED and

that the plaintiff's claims are hereby dismissed with prejudice.

IT IS FURTHER ORDERED: that the defendant's motion in limine is DENIED as moot.

New Orleans, Louisiana, February 20, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE